## ELIZABETH SMITH and others, *vs.* DAVID SMITH, Adm'r of NANCY SMITH.

A testator who died in 1834 devised to his son a farm, subject to the payment to his widow, during her life, by way of rent, of "one-third of all the wheat and corn he may raise thereon," and "as much hay and firewood as she may want for her own use." The son accepted the devise and became the administrator of the widow, who died in 1852, and, in 1854, her distributees filed their petition in the orphans court, praying that the administrator might be compelled to charge himself with the value of the one-third of the wheat and corn raised upon this farm during her life. HELD :

1st. That this rent reserved to the widow is a *charge on the land* devised to the son, and as limitations would be no bar to a bill in equity against him to enforce this charge, he cannot, by becoming her administrator, defeat the claim of her distributees by such plea.

2nd. This claim being well defined, the evidence of its surrender by contract or release must be clear, and in the absence of proof of any such contract or release, the mere declaration of the widow, that "she got her bread, corn, wood, cow-pasture and apples from the farm, and that is *all she asked for*," is not sufficient to relieve the son from the claim.

Where an order of the orphans court is partly in favor and partly against the appellant, that portion of it which is in his favor is not open for review in this court upon his appeal.

APPEAL from the Orphans court of Washington county.

George Smith died in March 1834, leaving a will, by which he made the provisions in favor of his widow, Nancy Smith, which are set out in the opinion of this court. The widow died in June 1852, intestate, and letters of administration upon her estate were granted to her son, David Smith, the appellee, who was also the devisee under the will of his father, the said George Smith. On the 5th of June 1854, the appellants, who were the legal representatives of the said Nancy Smith, filed their petition in the orphans court against the appellee, for the purpose stated in the opinion of this court, in which also all the facts of the case, the action of the court below, and the appeal, are sufficiently stated.

The cause was argued before LE GRAND, C. J., ECCLE-STON and TUCK, J.

*Z. S. Clagett* and *J. Dixon Roman* for the appellants, argued:

1st. The record affords *no evidence* of any such contract as is set up in the answer of the appellee. His answer is not to be taken as evidence; he was not called upon to answer under oath, but even if it is responsive, we insist it cannot avail unless supported by proof. This is a petition against him to account, and his answer admits his liability; all presumption of payment is excluded, because he admits he never did pay, but seeks to establish affirmatively this pretended agreement, and by this means exempt himself from responsibility. Now it is well settled, that where a complainant seeks discovery and relief, and the liability is once admitted by the answer, there can be no escape from it but by proof. 1 *H. & G.*, 81, *Ringgold vs. Ringgold.* 4 *Md. Rep.*, 87, *McNeal, et al., vs. Glenn.* 2 *Johns. Ch. Rep.*, 62, *Hart vs. Ten Eyck.* In a bill to account, the answer of the defendant *is no evidence of disbursements unless sustained by proof.* The testimony of Mrs. Russell, that "Mrs. Smith told her that she got her bread, corn, wood, cow-pasture, and apples, and that was all *she asked for*," is too vague and uncertain to support this pretended agreement. We say, produce an instrument of *writing* under the hand of Mrs. Smith, setting forth the agreement relied on, or produce receipts showing annual settlements between him and his mother, or a release. These evidences are not to be found. The defendant should have them for his protection. There is no hardship in requiring such proof, and the absence of it justifies the conclusion, that there was no such agreement or understanding between the parties.

2nd. But if the agreement is proved, then we say it is void for want of consideration. Where is the benefit conferred upon Mrs. Smith by such a contract, and the disadvantage to the defendant, so as to amount to a consideration? The defendant alleges that he built a house, a barn, and a wagon-shed, dug a well, paid taxes, &c. For whose benefit, we ask, were these improvements made? The answer is, the *defendant himself*, who had the fee-simple estate in this farm *after the death of his mother*, subject only to the payment of

$3500 in seven years, one-sixth of which he was himself entitled to. The consideration then is improvements made *upon his own property*. These improvements redounded to the benefit of the owner in fee exclusively without adding to the rents of Mrs. Smith. But even if they did increase the rent, he was by the will to pay one-third of the wheat, corn, &c., raised on the farm to his mother, *at all events*, without any charge against her for any improvements or repairs.

3rd. The plea of limitations cannot avail. The defendant, as devisee of his father, received the rents charged upon the land as trustee for his mother. It is such a trust as forbids the statute of limitations to be set up as a bar to this claim of the appellants. The question of limitations arises in this case as it would arise in a suit by Mrs. Smith against the devisee of her husband, George Smith. This rent was clearly a *charge upon* the land, and Mrs. Smith could at any time in her life have filed a bill in equity to enforce it, and so could her administrator after her death. To such a bill the defendant, the devisee of the land upon which the charge rested, could not defend himself by the plea of limitations. The cases of *Crawford vs. Severson*, 5 *Gill*, 443, and *Greenwood vs. Greenwood*, 5 *Md. Rep.*, 334, fully establish this proposition. But in this case the administrator is the very party against whom the claim exists; he is the devisee of the land subject to the charge; he has received the rent and failed to pay it over, it therefore became a debt due by him to the estate of his intestate, and which he, as her administrator, was bound to use due diligence in collecting, and if he did not was himself responsible. By administering upon the estate of his creditor, his plea of limitations is rendered no more available than it would have been if another party was the administrator and had sued him in equity for the enforcement of the charge.

4th. The orphans court clearly has jurisdiction to require the administrator to charge himself with this rent. The appellants had no power to proceed in equity *against the land*; the administrator of Mrs. Smith was the party to do this, and

if any other person than himself had been the devisee of the land, the case would have been clear of difficulty.   But being himself both devisee of the land charged and administrator of the party in whose favor the charge was made, the charge was a debt *due by himself* to the estate which he was bound, by the act of 1798, ch. 101, sub-ch. 8, sec. 20, to return in his inventory, and if he fails to do this, a petition may be filed by any party interested, and the orphans court, *with consent of parties*, may decide on the same, or it may be referred to arbitrators or issues directed.   Now our petition alleges this failure, and to this the defendant filed his answer, and evidence was taken and the case decided by the orphans court. No reference was made and no issues asked for, and the action of the parties in taking the testimony, &c., is conclusive evidence of their consent, under this section of the law, to the decision of the case by the orphans court.   See also the *Act of* 1831, *ch.* 315, *secs.* 12, 13.

*Daniel Weisel* for the appellee, argued:

1st. The orphans court has no jurisdiction to grant the relief prayed for in this petition.   This is not a proceeding *in rem* against the land, which could only be by bill in equity, but it is a proceeding against the administrator to correct his accounts.   These accounts are correct in themselves, and all that the petition alleges is, that the administrator has not charged himself with the one-third of the wheat and the corn. The prayer to *open the* accounts therefore could not be granted. The question then is, had the court jurisdiction under the prayer for general relief?   I say not.   In such a case the petitioners can only get relief conformable to the special relief asked for.   Now if this defendant is liable to account further, then this petition is nothing less than a bill to account, over which the proper tribunal to exercise jurisdiction is a court of equity.   The claims referred to in the 12th and 13th sections of the act of 1831, ch. 315, are not such *disputed* claims as the executor himself may owe.   The very fact that the claim was *disputed* takes it out of the operation of this act

and makes it a subject of a suit in equity.   Nor does the act of 1798, ch. 101, sub-ch. 8, sec. 20, embrace this case, for the *consent of the parties* has not been given in such a manner as to vest the jurisdiction in the orphans court under this act.

2nd.   But suppose the court had jurisdiction, then I say the petition is a bill for an account, and is to be governed by the same rules as to evidence that a similar bill in equity would be.   The answer alleges that *nothing is due*, and that Mrs. Smith had been fully content, satisfied, and paid all claim on account of the wheat and corn; it is responsive to the bill, and not being overcome must prevail.   4 *G. & J.*, 479, *Brown vs. Wallace.   9 Gill*, 212, *Beatty vs. Davis.   2 Story's Eq., sec.* 1528.   It was competent for the mother and son to make just such an arrangement about the farm as they chose, and just such an one as the answer states was made.   The defendant says in his answer he does *not owe* any portion of the wheat and corn, and that his mother has been fully content and satisfied therefor.   This surely is *responsive* to the petitioner, and the *mode* in which the satisfaction is made does not invalidate this part of the answer, and is not new matter in avoidance to be sustained by proof.   But it is said there is no consideration for this agreement.   Any thing is a sufficient consideration which gives an inconvenience or an injury to the party promising.   The expenditure of the money for the improvements was a sufficient consideration.   The acceptance of the corn, &c., delivered, was a discharge of the rent.   3 *Johns.*, 229, *Tillotson vs. Preston.   5 Do.*, 268, *Johnston vs. Brannan.*   Courts of justice will not look to the adequacy or inadequacy of the consideration.   *Chitty on Cont.*, 32, 33.

3rd.   But even if this defence is to be regarded as new matter, then I say it has been *sufficiently proved;* such an agreement need not be proved by *writing*, it may be inferred from the acts and conduct of the parties during a long course of time.   We show here acts of the parties which would not have been done except upon the hypothesis of such a contract. The defendant hauled his mother's hay, pastured her cow and hogs, and furnished her annual supply of apples, all of which

he was not required by the will to do, and which could only have been done upon some contract or understanding of the parties. These acts, coupled with the testimony of the witnesses, that she never *claimed* more than she received, that she *would not have more* than she could make use of, that she *got all she asked for*, with the fact that she never asserted her claim to this large balance of wheat and corn now demanded, are proof conclusive that there was just such an arrangement between the mother and son as is set up in his answer. He made improvements which he could not have done unless there was such an understanding, for the farm was not a productive one, and he could not have paid this rent and lived *comfortably* upon it, and at the same time made such improvements as he did.

4th. But this claim is barred both by lapse of time and limitations. Even if this be a trust, which it is not, it is not such an one as to exclude in equity the plea of limitations. That must be a pure technical continuing trust. But wherever there is concurrent jurisdiction at law the statute is pleadable. As in this case, she could have sued at law, by replevin, or brought her account for the rent due each year. 3 *G. & J.*, 389, *Green vs. Johnston.* 3 *Md. Ch. Dec.*, 398, *Young vs. Mackall.* 1 *Do.*, 53, *White vs. White.* This is not a charge upon the land devised, but if it is, this proceeding is not against the *land*, but for an account. The *debt* can be barred when proceeding for its recovery, though if *the security be pursued* a different rule of limitations would apply. 4 *Md. Ch. Dec.*, 262, *Ohio Life Ins. & Trust Co. vs. Winn & Ross*, and cases there cited. 1 *Story's Eq.*, sec. 529. 2 *G. & J.*, 310, *Watkins vs. Harwood.* But if it be a trust, still *lapse of time* is a bar. 3 *Bland*, 142, *Salmon vs. Clagett.* *Ibid.*, 110, *Hepburn's case.* 5 *G. & J.*, 124, *Steiger vs. Hillen.* 1 *Story's Eq.*, sec. 529.

LE GRAND, C. J., delivered the opinion of this court.

George Smith, among other things, devised as follows:

"*Item.*—It is further my will, that my son, David, is to

furnish to my wife, as aforesaid, the one-third of all the wheat and corn which he may raise on my farm during the lifetime of my wife, aforesaid, the same to be delivered to her in such manner as she may direct; and it is further my will, that my son, David, as aforesaid, shall also deliver to my said wife, from the farm, as much hay and firewood as she may want for her own use during her natural life.

"*Item.*—It is my will, and I hereby bequeath to my son David, my farm in Washington county, near the town of Sharpsburg, and on which my said son David now resides, to him and his heirs forever, subject, however, to the following provisions, to wit: The one-third of the wheat and corn, hay and firewood, which is to be furnished to his mother during her life, is all the rent he is to pay for the same during that period; and at the death of my wife, my said son David is to pay for the aforesaid farm the sum of three thousand, five hundred dollars, in yearly payments of five hundred dollars, without interest, which is to be equally divided among my six children, or their legal representatives, share and share alike."

The testator died in the year 1834, and his widow in the month of June 1852.

The appellants, who are the legal representatives of Nancy Smith, filed their petition in the orphans court against the appellee, charging him with having failed to account for a note of $200, and interest thereon, due from him to the said Nancy and unpaid at the time of her death; and also, that she had never received, up to the time of her death, the one-third part of the wheat and corn raised on the farm by the appellee, or any part thereof, or any satisfaction or payment of the same. It also alleges, that he had settled two accounts, and in neither of which had he charged himself with the value of the one-third of the said wheat and corn, nor with the said $200 and interest, and praying that said accounts may be opened and re-stated, and errors therein corrected; and that he might be compelled to charge himself with the amount of wheat and corn not furnished by him to his mother, the intestate; and with the $200 and interest; and also, for further and other relief.

The orphans court disallowed so much of the prayer of the

petitioners as related to the opening of the accounts, and the wheat and corn; but allowed so much of it as applied to the $200. The appellants appealed from the order of the court; the appellee did not, and this puts out of view so much of the order of the court as has reference to the $200, there being no appeal from it.

In reply to the petition of the appellants, the appellee claims to have fully satisfied all demands of his deceased mother against him. With regard to the one-third part of the wheat and corn raised on the farm, the answer of the appellee substantially states, that after the death of the father, and as a preliminary to his consenting to take said farm under the devise, situated as it was, it was agreed between him and his mother, that inasmuch as the farm needed large repairs, he should make all such repairs and pay all taxes himself, and that in consideration of these, she would not require him to pay the full third of the said wheat and corn, but in addition to the hay and firewood, she would be content with only so much of said wheat and corn, annually, as she might need for her purposes; and that with this understanding and agreement, he took possession and faithfully delivered to his mother whatever she required for the support of herself and family. The evidence is abundant to show he much improved the place by adding to the old, and by the erection of new buildings; but there is no proof whatever to show this was done under an express agreement between him and his mother. This being the state of the case, it is wholly unimportant to inquire, whether the agreement set up in the answer of the appellee, if fully proven, would have been sufficient to exonerate him from the liability imposed by the will of his father? The only testimony which can in any sense be regarded as reflecting light upon the understanding, if any, between the mother and son, is that of Mrs. Russell. She does not profess to have any knowledge of any contract, but merely of the delivery of corn, &c., every year by the son to the mother, and that Mrs. Smith told her she got her bread, corn, wood, cowpasture and apples from the farm, and that was all she asked. This, surely, is not sufficient to relieve the son from the obli-

gation he assumed when he undertook to discharge the trust created by the will of his father in behalf of his mother.

Mrs. Russell does not say in any part of her evidence that Mrs. Smith at any time declared she had released her son, or that she had made a contract with him, by which, if he added to the buildings on the place, and furnished her with what she wished for her family, he was to be discharged from the remainder of the obligation devolved on him. Her testimony only goes to the extent, that Mrs. Smith said she got what "*she asked for.*" It may be well conceived, that a creditor may be indulgent without meaning thereby to release his claim against his debtor, and especially so in the case where a mother is the creditor and a child the debtor.

Where a claim is as well defined as is the one in this case, the evidence ought to be clear of its surrender, and not gathered from conjecture or equivocal expressions such as those testified to by Mrs. Russell. Looking to the testimony, we cannot see that the understanding and agreement averred by appellee are sustained, and therefore, in this particular, we dissent from the conclusion arrived at by the orphans court. It may not, however, be improper to remark, that it is by no means a strained conjecture to suppose, that parties, standing in the tender and close relation of mother and son, would manage their business with less observance of the formalities of business than would be the case in transactions between strangers, and such a circumstance ought not to be without its due weight in the ascertainment of the state of accounts between them. It is possible that in this very case there was an arrangement between the parties which would, could it be proven, discharge the appellee from all responsibility to the estate of his mother; nor is it improbable the failure to produce the evidence is owing to the confidence mutually subsisting between mother and child, which prevented its assuming the form required by the law. If such be the case, as much as it may be regretted, nevertheless it cannot be remedied by the courts. They can only regard cases as they appear by the evidence. If parties, from any cause, have failed to perpetuate the evidence of their

Smith, *et al.*, *vs.* Smith's Adm'r.

transactions, they must bear the consequences of their indifference to their interests.

The case of *Crawford vs. Severson*, 5 *Gill*, 443, and the case of *Greenwood vs. Greenwood*, 5 *Md. Rep.*, 336, show, that the rent reserved to Mrs. Smith is a charge on the land devised to the son, and also, that the statute of limitations is no bar to the claim. It is true, that in both the cases referred to, the proceeding was in equity to affect the thing—a proceeding *in rem*. This can make no difference so far as the case now before us is concerned. Had any one but the appellee administered on the estate of his mother, such other person *could* have filed his bill in equity to charge the land for the amount due to his intestate, and in that case the appellee could not have defeated the claim by the plea of limitations. The cases we have cited are *full to this point; and it would be strange if the debtor*, by administering on the estate of his creditor, could deprive the estate of what is justly due to it. We think, therefore, the statute unavailing in this proceeding.

We see no error in the accounts which have already been passed by the appellee, and therefore no cause why they should be opened. Instead, therefore, of these accounts being opened as asked by the appellants, the appellee should file another account, charging himself with the amount due to the estate of his intestate. To get at this amount, testimony should be taken and the appellee allowed, by way of credit, the value of all he furnished his mother. So much of the order of the orphans court as is appealed from will be reversed, and the cause remanded for further proceedings, in conformity with these views.

*Order reversed and cause remanded*
*for further proceedings.*